UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| L.C. BROWN, | ) | C/A No.  4:14-4732-TLW-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Report and Recommendation |
| SGT. C. WEST, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PROCEDURAL BACKGROUND**

The Plaintiff originally filed this action in the Court of Common Pleas for Lee County, State of South Carolina. On December 15, 2014, Defendant filed his Answer and Notice of Removal to the United States District Court, District of South Carolina, pursuant to 28 U.S.C. §1441 and §1443.[1] Plaintiff is currently incarcerated at Lee Correctional Institution ("LCI"). Defendant filed a motion to dismiss or, in the alternative, a motion for summary judgment along with a memorandum, affidavit, and exhibits in support of said motion. (Document #15). Because Plaintiff is proceeding pro se, he was advised on or about May 14, 2015, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Defendant's motion for summary judgment could result in the dismissal of his complaint. Plaintiff filed a response on May 21, 2015. (Doc. #20). Plaintiff filed a motion for default judgment on May 15, 2015. (Doc. #18).

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

### Plaintiff's Motion for Default Judgment

Plaintiff filed a motion for default judgment on May 15, 2015, asserting that Defendant received an extension until May 9, 2015, to file a dispositive motion and failed to do so by that date.

It is recommended that Plaintiff's motion for default judgment by denied. On March 25, 2015, Defendant filed a motion for extension of time to file dispositive motions requesting an additional forty-five days making the dispositive motion due on May 9, 2015. (Doc. #11). This motion was granted. However, May 9, 2015, was on a Saturday. Defendant filed the motion for summary judgment on Monday, May 11, 2015. Therefore, it is recommended that this motion for default judgment (Doc. #18) be denied.

### DISCUSSION

### STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any

cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendant has pleaded the affirmative defense of failure to comply with the PLRA's exhaustion requirement and has moved for summary judgment on that basis. Defendant submitted the affidavit of David Martinez who attests that he is the Inmate Grievance Administrator for the South Carolina Department of Corrections (SCDC) and has access to SCDC's Automated (CRT) System which records inmate grievances. (Doc. #15-7). Martinez reviews inmate's compliance with the policies and procedures of the SCDC. Id. Martinez attached a copy of a Request to Staff Member and Step 1 Grievance (LEECI 0516-14) that was completed by Plaintiff as well as records of Plaintiff's Grievance History for part of 2014, as Exhibit A and Bates labeled as West 0008-0015. Id. Plaintiff's Step 1 Grievance LEECI 0516-14 relating to the incident alleged in the complaint was returned unprocessed. Id. Based on the agency records, Plaintiff did not file any additional Step 1 grievances relating to the incident or a Step 2 Appeal related to this incident. Id. Therefore, Martinez attests that Plaintiff failed to properly exhaust his administrative remedies and failed to comply with agency guidelines for grieving the issues he references in his Complaint regarding excessive use of force, cruel and unusual punishment, and confiscation of personal items. Id.

In his response in opposition to summary judgment, Plaintiff asserts that in order to file a Step One grievance, he is required to make an "informal resolution" to the appropriate supervisor. At the time of the incident, Plaintiff alleges he made more than one attempt to make an informal resolution with Davis, the appropriate supervisor, but was denied a response. Plaintiff contends that the supervisor's failure to respond to the informal resolution deprived him of the right to appropriately exhaust his administrative remedies. Plaintiff argues that he did not file this action until October 7, 2014, six months after he made several attempts to receive a response to his

informal resolutions. Plaintiff attached a copy of a document entitled "Inmate Request" dated April 2014, in which he stated that he had made several attempts to make an informal resolution upon Davis, "the overseer of 'SMU'" but that he failed to answer the requests. In this document, Plaintiff requested that Davis be ordered to respond to the informal resolution request. (Plaintiff's Exhibit A). Plaintiff attached what appears to be a response from the Inmate Grievance Administrator dated October 7, 2014, as follows:

> I have reviewed your requests with regards to RTSMs not receiving a response. Your concerns are valid and the issue is a known problem, however, we now have a new warden and a new major in place. Please be assured that Warden Reynolds' and Major Jefferson are very much aware of this issue and are actively concentrating on a resolution and will be putting institutional guidelines in place soon. I know this has been a concern for inmates for some time now, but I encourage you to be patient a little longer as new standards/guidelines take time to implement.

(Plaintiff's Exhibit B, doc. 20-1 at 2).

Defendant filed a reply to the response maintaining that Plaintiff did not properly exhaust his available administrative remedies as required and that the exhibits Plaintiff attached to his response "in no way substantiate that Plaintiff exhausted his administrative remedies as it relates to the incident alleged in Plaintiff's complaint." However, Defendant did not attach an affidavit from the grievance coordinator in reference to Plaintiff's "Exhibit B" explaining or verifying the exhibit. Defendant further stated that, in the alternative, he is entitled to a dismissal of the action based on the merits.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust the available administrative remedies before filing a 1983 action concerning conditions of his confinement. 42 U.S.C. 1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that

exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. § 1997e(a). Accordingly, before Plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies available through the grievance process within the SCDC. The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); *see* Porter v. Nussle, 534 U.S. 516 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir. 2001)(exhaustion required even though Plaintiff claimed futility); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001)(exhaustion required even though Plaintiff claimed he was afraid); *see also* Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001)(unpublished opinion)(applying Booth v. Churner to affirm district court's denial of relief to Plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386 (2006).

Several circuits have held that a grievance may be considered exhausted under the PLRA when a prisoner files a grievance but has not received a timely determination. Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir.2004) ("[A]dministrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance."); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir.2002) ("[T]he failure [of prison officials] to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable."); Lewis

v. Washington, 300 F.3d 829, 833 (7th Cir.2002) (stating that prison's failure to timely respond renders administrative remedies unavailable); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir.2001) ("[O]nce [the prison] failed to respond to [the prisoner's written grievance], no further administrative proceedings were 'available' to him."); Powe v. Ennis, 177 F.3d 393, 394 (5th Cir.1999) (per curiam) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired."). See McMichael v. Pate, 2014 WL 793070 (D.S.C. Feb. 24, 2014).

In the light most favorable to the Plaintiff, Plaintiff was not allowed to file a Step One Grievance until he filed and received an answer to informal resolution. Based on the evidence presented, for summary judgment purposes, Plaintiff has shown genuine issues of material fact as to whether his ability to exhaust his administrative remedies has been hindered. Accordingly, it is recommended that Defendant's motion for summary judgment based on Plaintiff's failure to exhaust prison administrative remedies be denied.

## **ALLEGATIONS/ANALYSIS**

The Plaintiff is currently incarcerated at McCormick Correctional Institution. At all times relevant to the allegations in the complaint, Plaintiff was housed at Lee Correctional Institution (LCI). Plaintiff alleges that Defendant violated his constitutional rights as a result of an incident on April 22, 2014, in which chemical munitions were dispersed by Sgt. West and Officer Kirkland into Plaintiff's cell. Specifically, Plaintiff asserts that he was secured in his cell on his bed when Defendant West and Officer Kirkland "came to his door and demanded Plaintiff to come to the door to be hand-cuffed so they both could come into the cell and place him on 'cell-restriction' in which

case Plaintiff, at that time and for over sixty (60) days were under 'cell restriction.'" (Doc. # 1 at 3). Plaintiff states that he continued to "pro-test" and asked to speak to "higher authority" when Sgt. West and Officer Kirkland, together, administered chemical-munition into Plaintiff's cell "excessively beyond what was reasonable for no substantial cause. Plaintiff alleges that Sgt. West used a large cannister believed to be used for only hostage or highly security concerns of threat. Plaintiff contends that he recently discovered damage to his membrane area of his left ear. Plaintiff alleges that he had complained that the chemical munitions had "entered his left ear, as well as his left-eye" and that he was denied a shower and for his cell to be sanitized leaving him to sleep on the bare concrete with no mattress, sheets, and blanket while in a cold cell.  Plaintiff seeks monetary damages against Sgt. West, as well as the costs and expenses of suit.

In support of the motion for summary judgment, Defendant submitted an affidavit in which he asserts his name is Colton West ("West") and is a Sergeant at Lee Correctional Institution. (Doc. # 15-1). West attached a copy of the Use of Force Reports and Incident Reports related to the April 22, 2014, incident as Exhibit A which are maintained in the ordinary course of business by the South Carolina Department of Corrections and Lee Correctional Institution. Id. West followed the policy and procedure when engaging inmate Brown. Id. On April 22, 2014, West and Officer Kirkland arrived at Plaintiff's cell in SMU for the purpose of restraining Plaintiff and removing him from his cell in order to be placed on cell restriction for a prior incident. Id. Brown and his cellmate were given several directives by Officer Kirkland to come to the food service flap in order to be restrained, but they both refused. Id. Officer Kirkland then dispensed a short burst of chemical munitions into Plaintiff's cell towards Plaintiff. Plaintiff and his cellmate were thereafter given more directives by Officer Kirkland to come to the food service flap in order to be restrained to which

8

Plaintiff and his cellmate again refused. In accordance with procedure, West dispersed a short burst of only 15 grams of chemical munitions into Plaintiff's cell. Id. After dispersing chemical munitions into Plaintiff's cell, Plaintiff and his cellmate still refused to comply with the directives being given by West and Officer Kirkland, and Plaintiff's cellmate brought his mattress to the cell door to secure the food service flap and block access. Id. At this time, Lt. Richardson, Lt. Shaw, and Officer Jonas arrived to inmate Brown's cell to assist with the ongoing situation. LT. Richardson gave inmate Brown and his cellmate several directives to come to the food service flap in order to be restrained to which they both finally complied. Id. Plaintiff was escorted to a holding cell and medical was notified. Plaintiff was medically assessed by Nurse Elizabeth Brown following the incident, who found Plaintiff to be without injury. Id. West never witnessed Plaintiff suffering any injury or illnesses as a result of his exposure to chemical munitions due to the incident that occurred on April 22, 2014. Id. West used only the amount of chemical munitions necessary to ensure institutional security and restore order to the area as well as gain compliance with Plaintiff as he was repeatedly refusing to comply with directives to present himself to be restrained so that he could be removed from his cell in a secure and safe fashion in accordance with policy. Id.

Defendant submitted the affidavits of Captain Franklin Richardson who attests that at the time of the incident on April 22, 2014, he was a Lieutenant at LCI; Lieutenant Evoney Shaw who attests that he was employed at LCI as a Lieutenant; and, Officer Mario Jonas who attests that he is an officer at LCI. (Docs. # 15-2, 15-3, and 15-4). Richardson, Jonas and Evoney attached to their affidavits a copy of the Use of Force Reports and Incident reports related to the April 22, 2014, incident that are maintained in the ordinary course of business by the SCDC and LCI. Id. On April 22, 2014, Lt. Shaw, Officer Jonas, and Richardson were alerted to an ongoing situation at Plaintiff's

cell. Id. When they arrived at Plaintiff's cell, they found that a mattress had been secured to the food flap of Plaintiff's cell by Plaintiff's cellmate and Plaintiff and his cellmate had repeatedly refused the directives of Officer Kirkland and Sergeant West to come to the cell door to be restrained in order to be placed on cell restriction. Id. Based on his review of the records and the repeated refusal to comply with directives, Sergeant West followed policy and procedure when engaging Plaintiff. Id. After Lt. Shaw, Officer Jonas, and Richardson arrived at Plaintiff's cell, Richardson gave several directives to Plaintiff and his cellmate to come to the cell door to be restrained to which Plaintiff and his cellmate finally complied. Plaintiff was medically assessed by Nurse Elizabeth Brown following the incident and found him to be without injury. Id.

Defendant submitted the affidavit of Elizabeth Brown, RN, who attests that she is a registered nurse and worked as a contract nurse at LCI at all times relevant hereto. (Doc. # 15-5). Nurse Brown attached a copy of the incident reports and Use of Force reports relating to the April 22, 2014, incident and a copy of the medical summary notes for Plaintiff that are maintained in the ordinary course of business by the SCDC and LCI. Id. Nurse Brown asserts that she followed policy when engaging Plaintiff. Id. On April 22, 2014, she was called to SMU to assess Plaintiff shortly after he was exposed to chemical munitions. Id. Nurse Brown assessed Plaintiff and found him to be alert, oriented, able to communicate, and noted him as having no coughing or eye tearing. Id. Plaintiff had even and unlabored respirations. Id. Brown encouraged Plaintiff to continue to flush his eyes, and Plaintiff was not denied medical care for exposure to the chemical munitions or otherwise at any point on April 22, 2014. Id. Nurse Brown attests that she never witnessed Plaintiff suffering any injury or illnesses as a result of exposure to the chemical munitions on April 22, 2014. Id.

The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The predominate focus in a claim for excessive force is not on the extent of the injury but rather the nature of and justification for the inflicted force. Wilkins v. Gaddy, 599 U.S. 34, 37 (2010). The Eighth Amendment analysis requires inquiry at to whether a prison official "acted with a sufficiently culpable state of mind and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." Williams, supra.

In an excessive force claim, a claimant must meet a heavy burden to satisfy the subjective component. Whitley v. Albers, 475 U.S. 312, 321 (1986). The claimant must show that a correctional officer applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good faith effort to maintain or restore discipline. (Id.) (internal quotation marks omitted). The objective component is not as demanding because "[when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated whether or not significant injury is evidence." Wilkins v. Gaddy, supra, (internal quotation marks omitted).

In an excessive force claim, the state of mind is "wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. at 322. In Whitley, the Supreme Court identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." Whitley v. Albers, 475 U.S. 312, 321

11

(1986). Whether there is an Eighth Amendment violation in the context of a prison disturbance depends upon "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins, 130 S.Ct. 1175, 1178. See also Hudson v. McMillan, 503 U.S. 1, 7, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).[2]

Federal courts closely scrutinize the use of tear gas or mace in correctional facilities. See, e.g., Bailey v. Turner, 736 F.2d 963, 969-70 (4th Cir.1984)(prison officials may use mace to compel the obedience of a recalcitrant prisoner). The Fourth Circuit has stated that "[a] limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate" and "because a limited use of mace constitutes a relatively mild response compared to other forms of force, the initial application of mace indicates a tempered response by the prison officials." Williams, 77 F.3d at 763 (internal quotations marks and citation omitted). Accordingly, although it is not *per se* unconstitutional for guards to spray mace at prisoners confined in their cells, it is necessary to examine the "totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas is used [to] determin[e] the validity of the use of tear gas in the prison environment." Bailey, 736 F.2d at 969.

In this case, there is no dispute that Defendant used chemical munitions in Plaintiff's cell.

---

[2] While the United States Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim," this does not mean the extent or absence of serious injury is irrelevant. Wilkins , 130 S.Ct. at 1178. Instead, the extent of injury suffered is just one factor to account for in the analysis, "but does not end it." See Hudson, 503 U.S. at 7 (holding "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."). The extent of injury may also provide some indication of the amount of force applied. Wilkins, 130 S.Ct. at 1178. A de minimis use of physical force does not violate the Eighth Amendment, "provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. Thus, an inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Id.

It is undisputed that Plaintiff refused to follow directives. Considering the first and second prong of the <u>Whitley</u> factors and the guidance from <u>Williams</u>, Plaintiff's allegations do not support a claim of excessive force. There is no evidence that demonstrates that any perceived malice was directed at the Plaintiff. Defendant administered one burst of chemical munitions into Plaintiff's cell when Plaintiff refused to obey an order. It appears the need for force and the amount of force used was not unreasonable. Beyond his own allegations, Plaintiff provides insufficient evidence that he was injured by the exposure to chemical munitions.[3] The medical records reveal Plaintiff was assessed by Nurse Brown shortly after the chemical munitions were dispersed, and there was no distress, suffering or injury as a result.

Additionally, the court "must accord due deference to an officer's efforts to restrain [an inmate] when faced with a dynamic and potentially violent situation; otherwise, 'we would give encouragement to insubordination in an environment which is already volatile enough.'" <u>Scarbro v. New Hanover County</u>, 374 F. App'x 366, 370 (4th Cir.2010) (unpublished) (quoting <u>Gravson v. Peed</u>, 195 F.3d 692, 697 (4th Cir.1999)). Thus, the allegations are not sufficient to give rise to a genuine issue of fact as to whether constitutionally excessive force was used against the plaintiff in this instance. Furthermore, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See <u>Olim v. Wakinekona</u>, <u>supra</u>. Federal courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system. <u>Block v. Rutherford</u>, <u>supra</u>; <u>Rhodes v. Chapman</u>, <u>supra</u>. As previously discussed, the Supreme Court noted that the administration of detention

---

[3] Plaintiff references an artificial lens but produces no competent evidence that the chemical munitions in any way caused injury to this condition.

facilities is a complex task, with numerous administrative goals, including, among other things, the maintenance of order and discipline within the facility. These complex responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials. Accordingly, the Defendant should be granted summary judgment on this claim.

**Conditions of Confinement**

Plaintiff alleged that he had to sleep on the cold floor without a mattress or covers and without a change of underwear. It does not appear Plaintiff has directed these allegations at Defendant West. In the event Plaintiff is attempting to raise these allegations of conditions of confinement against Defendant West, the claim fails. Plaintiff's allegations doe not rise to the level of cruel and unusual punishment and are insufficient to establish a constitutional violation.

To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993) ( quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir.1991)). Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition. See Strickler, 989 F.2d at 1380–81. "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir.2003); see also White v.

Gregory, 1 F.3d 267, 269 (4th Cir.1993) ("[A] prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") (citation omitted). Also, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Ohm v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed. 813 (1983). "[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free of discomfort." Rhodes v. Chapman, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). "To the extent such conditions are restrictive and even harsh, they are part of the penalty that criminals pay for their offenses against society." Id. at 338.

Plaintiff has not presented evidence to create a genuine issue of material fact as to whether he was denied the minimal civilized measure of life's necessities, or that the named Defendant engaged in any conduct "for the very purpose of causing harm or with the knowledge that harm would result." See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Plaintiff has not shown that he was deprived a "basic need" and that these deprivations were attended by deliberate indifference on the part of the Defendant. Strickler, supra. Further, Plaintiff has failed to present evidence of the type of serious injury required to state a cognizable claim of cruel and unusual punishment. Strickler, 989 F.2d at 1381 ("plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions"). Therefore, it is recommended that summary judgment be granted for Defendant on this claim.

**Qualified Immunity**

Defendant denies that any of the alleged conduct or conditions complained of by Plaintiff

gives rise to a constitutional violation. However, Defendant asserts that, even if this Court concludes that the facts are sufficient to establish a Constitutional claim, he is entitled to qualified immunity.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

Akers v. Caperton, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the Plaintiff fails to show that Defendant violated any of his clearly established constitutional or statutory rights. However, even if there was a violation, Defendant is

entitled to qualified immunity. Thus, the undersigned recommends that summary judgment be granted as to this Defendant.

**Pendent Jurisdiction**

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiff's complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)

## CONCLUSION

Based on the above reasoning, it is RECOMMENDED that Defendant's Motion for Summary Judgment (document #15) be GRANTED.

Further, it is RECOMMENDED that all outstanding motions be deemed MOOT.

Respectfully submitted,

<u>Thomas E. Rogers, III</u>
June <u>15</u>, 2015                             Thomas E. Rogers, III
Florence, South Carolina                  United States Magistrate Judge

**The parties' attention is directed to the important notice on the next page.**